IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: | * |
| BARRY L. MICHAEL, | * CHAPTER 7 |
|     Debtor | * |
| | * CASE NO. 1:05-bk-06085MDF |
| BARRY L. MICHAEL, | * |
|     Movant | * |
| | * |
| v. | * |
| | * |
| CHARLES J. DeHART, III, STANDING | * |
| CHAPTER 13 TRUSTEE, | * |
|     Respondent | * |

**OPINION**

Before me is the motion of Barry L. Michael ("Debtor") to compel the Standing Chapter 13 Trustee ("the Trustee") to turn over funds that Debtor paid into his chapter 13 plan but which were undistributed on the date the case was converted to chapter 7. For the reasons that follow, I will grant the motion.

**Procedural History**

On September 10, 2005, Debtor filed a petition under chapter 13 of the Bankruptcy Code.[1] His plan of reorganization, which was confirmed on June 7, 2006, called for him to pay approximately $277 per month to the Trustee for fifty-three months for distribution to certain creditors holding secured and priority claims. After the payment of administrative expenses, Debtor proposed that all distributions under the plan be made to three creditors: GMAC Mortgage ("GMAC"), which held the mortgage on Debtor's residence; Citifinancial, which held a lien on the title to Debtor's truck; and the Line Mountain School District, which held a priority

---

[1] The filing of this case pre-dated the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8, 119 Stat. 37 ("BAPCPA"), which became effective on October 17, 2005.

claim for taxes. The plan contained the following provision:

> Debtor believes that no funds will be available for [unsecured] claimants. However, to the extent funds become available, said claims including the claim of Pennsylvania Housing Finance Agency and Citifinancial for the third mortgage, as well as the unsecured portion of the vehicle loan, [are] to be paid pro-rata.

On April 7, 2006, an Order was entered granting Debtor's motion to allow his wages to be attached and paid directly to the Trustee to fund his plan.

On August 15, 2006, GMAC obtained an Order granting it relief from the automatic stay. Although GMAC was now free to enforce its rights in state court and foreclose on Debtor's home, Debtor did not attempt to amend his plan or to terminate the wage attachment order. Accordingly, the Trustee continued to receive automatic payments of $277 per month from Debtor's employer and to forward distributions from the plan to GMAC. GMAC, however, refused to accept the funds, which then accumulated in the Trustee's account until October 26, 2009, when Debtor converted his case to chapter 7.

On October 29, 2010, Debtor filed the motion now before me seeking an order compelling the Trustee to turn over to him the funds returned by GMAC, which totaled $9,181.62. The Trustee objected to the motion on the grounds that the funds were paid under the terms of the plan and were being held in trust for the benefit of unsecured creditors. If the Trustee's objection were sustained, after the payment of any outstanding administrative expenses, the balance would be distributed *pro rata* to the holders of allowed unsecured claims according to the terms of the confirmed plan. Based upon an affidavit filed by Debtor's counsel, if the funds are determined to be property of Debtor, they will be disbursed to Debtor's counsel in payment of attorney's fees.

2

A hearing on Debtor's motion was held on December 14, 2009. The parties have filed briefs and the matter is ready for decision.[2]

**Discussion**

The parties agree that the dispute in this case is purely a question of law – what does the Bankruptcy Code require the Trustee to do with undistributed funds received pursuant to a confirmed plan when a case is converted to chapter 7?

Before October 22, 1994, court decisions diverged sharply on the disposition of property of the estate upon conversion of a chapter 13 case to chapter 7.[3] The primary issue debated by the courts was whether or not property acquired by a debtor after a chapter 13 case was filed became property of the chapter 7 estate.[4] An amendment to the Bankruptcy Code in 1994, which added § 348(f), helped clarify the issue. Section 348(f) overruled holdings in cases such as *Matter of Lybrook*, *supra*, n. 3 and adopted the reasoning of the Court of Appeals for the Third Circuit in *In re Bobroff*, *supra*, n. 3.

---

[2]I have jurisdiction to hear this matter pursuant to 28 U.S.C. §§157 and 1334. This matter is core pursuant to 28 U.S.C. §157(b)(2)(A) and (O). This Opinion constitutes findings of fact and conclusions of law required to be made by Federal Rule of Bankruptcy Procedure ("FRBP") 7052, which is applicable to contested matters pursuant to FRBP 9014.

[3]*See, e.g., Resendez v. Lindquist*, 691 F.2d 397, 399 (8th Cir. 1982)(holding that funds held by chapter 13 trustee become property of the chapter 7 estate upon conversion, not subject to exemption); *Matter of Lybrook*, 951 F.2d 136 (7th Cir. 1991)(holding inheritance received by debtor more than 180 days after filing, but before conversion, is property of chapter 7 estate); *Calder v. Job*, 973 F.2d 862, 866 (10th Cir. 1992)(finding property acquired by chapter 13 debtor before conversion is property of chapter 7 estate). *Contra Bobroff v. Continental Bank (In re Bobroff)*, 766 F.2d 797 (3d Cir. 1985) (holding tort action accruing after original chapter 7 petition not part of estate when case converted to chapter 13 and then back to chapter 7).

[4]*See* 4 Keith M. Lundin, *Chapter 13 Bankruptcy*, §315.1, p. 315.1 -315.24 (3d ed. 2000 & Supp. 2004)(collecting cases).

3

In *Bobroff,* the Court of Appeals addressed whether a tort claim action that arose after the case was converted from chapter 7 to chapter 13 was property of the estate when the case was reconverted to chapter 7. The Court held that because the debtor was not eligible to proceed under chapter 13 due to the debt limitations of § 109, conversion of the case from chapter 7 to chapter 13 was void *ab initio.* Because the filing never was a chapter 13 case, the definition of property of the estate in § 1306, was irrelevant to the analysis. *Id.* at 803. The tort claim action, which arose after the filing of the petition, clearly was not property of the chapter 7 estate under the applicable provision – § 541(a).

In its decision, the Court of Appeals observed that one of the goals of the Bankruptcy Code is to encourage the use of debt repayment plans rather than the liquidation of assets.

> If debtors must take the risk that property acquired during the course of an attempt at repayment will have to be liquidated for the benefit of creditors if chapter 13 proves unavailing, the incentive to give chapter 13 – which must be voluntary – a try will be greatly diminished. Conversely, when chapter 13 does prove unavailing, no reason of policy suggests itself why the creditors should not be put back in precisely the same position as they would have been had the debtor never sought to repay his debts. . . .

*In re Bobroff*, 766 F.2d at 803 - 04.[5]

As amended by the Bankruptcy Reform Act of 1994, 11 U.S.C. §348(f)(1)(A) provides that when a chapter 13 case is converted to chapter 7, "property of the estate in the converted case shall consist of property of the estate, as of the date of filing of the petition, that remains in the possession of or is under the control of the debtor on the date of conversion . . . ." 11 U.S.C.

---

[5]The Court of Appeals then held that the Bankruptcy Court did not have "related to" jurisdiction over the state court suit because the suit had been filed post-petition. Since the chapter 7 estate was created on the petition date and did not include post-petition assets such as tort claims, the result of the lawsuit could have no conceivable effect on the estate being administered in Bankruptcy. *Id. See also Pacor v. Higgins*, 743 F.2d 984 (3d Cir. 1984)

4

§ 348(f)(1)(A). However, if a case is converted to chapter 7 in bad faith, "property in the converted case shall consist of the property of the estate as of the date of conversion." 11 U.S.C. § 348(f)(2)(B). This amendment clarifies that property acquired by a debtor after a chapter 13 petition is filed and before the case is converted to chapter 7 is not property of the chapter 7 estate, unless the case is converted in bad faith. What is unresolved by the statute, however, is whether undistributed payments under a confirmed plan held by a chapter 13 trustee on the date of conversion to chapter 7 should be returned to the debtor or distributed to creditors pursuant to the plan. *See In re Hardin*, 200 B.R. 312, 313 (Bankr. E.D. Ky 1996)(§ 348(f) does not address rights of creditors in funds held by trustee when confirmed chapter 13 case converted to chapter 7). The courts have not resolved this statutory conundrum uniformly; some have required distributions to be made to creditors while others have returned the funds to the debtor. Courts concluding that a chapter 13 trustee must distribute the funds to creditors under the terms of the plan have followed four lines of reasoning, which I will discuss below.

   *1.  Distribution to creditors is mandated by 11 U.S.C. § 1326(a)(2).*

  Section 1326(a)(1) requires a debtor to begin making payments under a proposed plan within thirty days of the date of the "order for relief" or the filing of the plan, whichever is earlier. 11 U.S.C. § 1326(a)(1). Section 1326(a)(2) further provides that a "payment made under this subsection [§ 1326(a)] shall be retained by the trustee until confirmation or denial of confirmation of a plan. If a plan is confirmed, the trustee shall distribute any such payment in accordance with the plan as soon as practicable." 11 U.S.C. § 1326(a)(2). In the instant case, the Trustee contends that the requirement that the trustee "shall distribute" payments in accordance with the plan gives creditors proposed to be paid under the plan a vested interest in all payments

5

received by the trustee. Therefore, upon conversion to chapter 7, the post-confirmation payments held by the Trustee "belong to the Debtor's creditors pursuant to the confirmed plan" and should not be returned to Debtor. (Trustee's Answer, ¶ 13.) To support his reliance on § 1326(a)(2), the Trustee cites *In re Waugh*, 82 B.R. 394 (Bankr. W.D. Pa. 1988) and *In re Lennon*, 65 B.R. 130 (Bankr. N.D. Ga. 1986).[6]

*Lennon* and *Waugh* cite the statute's use of the word "shall" in § 1326(a)(2) to support the conclusion that a chapter 13 trustee must distribute the accumulated funds to creditors pursuant to a confirmed plan even after the debtor has exercised his absolute right to convert the case.[7] In *Lennon*, debtors converted their chapter 13 case to chapter 7 before their plan was confirmed. The chapter 13 trustee filed a motion seeking instruction from the court as to the appropriate disposition of the plan payments being held by the trustee. Because the plan had not been confirmed, the court ordered the distribution of the funds to the debtor. However, in *dicta,* the *Lennon* court stated that if the plan had been confirmed, creditors would have held a vested right in the proceeds of the plan that survived conversion of the case. "While Section 1326(a)(2) does

---

[6] The Trustee also relies on *In re Mehan*, 2000 WL 1010577 (Bankr. E.D. Pa.). However, the facts in *Mehan* are distinguishable from the instant case. In *Mehan*, the debtor was seeking a judgment against the trustee for the funds he distributed to creditors under a confirmed plan before the trustee received notice that the case had been converted to chapter 7.

[7] The right to convert from chapter 13 to chapter 7 has historically been interpreted as "absolute" due to the language of 11 U.S.C. § 1307(a), which states that a chapter 13 debtor has a non-waivable right to convert his case to chapter 7 "at any time." Whether the right to convert from chapter 13 to chapter 7 is truly "absolute" has been somewhat called into question by the decision of the Supreme Court in *Marrama v. Citizens Bank of Massachusetts*, 549 U.S. 365 (2007). *Marrama* examined language from 11 U.S.C. § 706(a) nearly identical to that of § 1307(a) and held that a chapter 7 debtor's right to convert to a chapter 13, once thought to be absolute, could be forfeited by bad faith conduct. The Supreme Court has not yet determined whether a debtor's absolute right to convert to chapter 7 is similarly limited.

6

not use vesting language, it is stated in mandatory terms. It directs that payments 'shall' be paid to debtor if no plan is confirmed, or if confirmed, the payments 'shall' be distributed in accordance with the plan. This mandatory provision has the effect of vesting an interest in creditors provided for by a confirmed plan in all payments made pursuant to such plan." *In re Lennon*, 65 B.R. at 137.

I find the *dicta* in *Lennon* to be unpersuasive, because it stretches the application of § 1362(a)(2) beyond its intended scope. Section 1362(a)(2) addresses itself to the chapter 13 trustee, and it directs his actions regarding the proper disposition of funds received pending confirmation or denial of confirmation of a plan. It neither addresses the disposition of plan payments made post-confirmation nor establishes rights in the payments when a case with a confirmed plan is converted to chapter 7. "By its terms, § 1326(a)(2) does not pertain to funds received by a trustee *after* confirmation of a chapter 13 plan." *In re Boggs*, 137 B.R. 408, 410 (Bankr. W.D. Wash. 1992).

In the *Waugh* case, unlike in *Lennon*, the court squarely faced the issue as to whether the debtor or the debtor's creditors were entitled to receive funds held by the trustee when a case with a confirmed plan converts to chapter 7. In his opinion, Judge Cosetti determined that the chapter 13 trustee serves as a trustee for creditors in the conventional sense. Thus, once plan payments are paid to the trustee, they constitute a trust *res* held by the trustee for the benefit of creditors. *In re Waugh*, 82 B.R. at 400. ( "The word 'shall' in section 1326(a)(2) creates the condition of a trust. Creditors have a right to the funds in an active confirmed chapter 13 plan upon payment by the debtor." )

7

Implied in Judge Cosetti's analysis is the assumption that the payments to the trustee create a trust and that the trust created is irrevocable. I respectfully disagree with Judge Cosetti's analysis and find the language of § 1326(a)(2) insufficient to create an irrevocable trust. An "irrevocable trust" has been defined as "[a] trust that cannot be terminated by the settlor once it is created." Black's Law Dictionary 1651 (9th ed. 2009). Under Pennsylvania law, a trust may be revoked by the settlor unless the trust instrument expressly provides that the trust is irrevocable. 20 Pa. C.S. A. § 7752 (Act of July 7, 2006, P.L. 625, No. 98, § 9). No facts or legal authority were cited in the *Waugh* decision to support the assertion that the debtor's payments to the trustee demonstrated that debtor intended to create an irrevocable trust for the benefit of creditors.

Section 1326(a)(6) discusses the responsibilities of the trustee, but does not support a finding that a trust was created, let alone an irrevocable trust. The argument that a chapter 13 trustee holds payments by a debtor in an irrevocable trust is particularly weak when juxtaposed against a chapter 13 debtor's "unwaivable" rights to convert or dismiss his case under § 1307. The Bankruptcy Code empowers a chapter 13 debtor, so long as the case had not been converted from another chapter, to dismiss his case at any time. Because dismissal of the case has the effect of vacating the order confirming the plan, it would be inconsistent with these principles to find that undistributed payments were being held by the chapter 13 trustee in an irrevocable trust. As the *Boggs* decision noted, "I cannot conclude that Congress intended legislatively to create trusts for creditors in enacting § 1326(a)(2) and (c); rather, Congress was apparently dealing with the questions of when plan payments are to begin, the disposition of funds in the event no plan is

8

Case 1:05-bk-06085-MDF    Doc 69    Filed 07/23/10    Entered 07/23/10 11:06:53    Desc
Main Document      Page 8 of 14

confirmed, and who is to handle the funds." *In re Boggs,* 137 B.R. at 410 (citing King, ed., 5 Collier on Bankruptcy, 15th Ed., ¶ 1326.01[2], at 1326-3 and 4).

In *Boggs*, as in this case, the chapter 13 debtors moved for conversion of their case to chapter 7 and for an order directing the trustee to turn over any funds not disbursed from their plan account prior to conversion. The trustee objected to the demand for turnover, arguing that creditors have "a superior vested interest" in the funds that the debtors paid to the trustee. *In re Boggs*, 137 B.R. at 409. The trustee asserted that the creditors' interest in the funds "vested" when the debtors paid the funds to the trustee. The court rejected this assertion because the trustee was relying solely on policy arguments and lacked case law or legislative history to support his position. *Id.* Specifically, the trustee was concerned that: (1) the debtors would receive a windfall if payments were returned to them; and (2) to avoid losing these anticipated payments, creditors would demand distributions on a "daily basis." *Id.*, 137 B.R. at 410-11. The *Boggs* court rejected these arguments as follows:

> The additional rationales for creditor vesting, that it is somehow unfair to creditors, or that a debtor ought not receive an unexpected windfall, are also flawed. Since § 1325(a) requires a finding that the holder of each allowed unsecured claim will receive not less than the holder would receive under chapter 7 to confirm a plan, it is not self-evident that the dilution effect of treating pre-conversion creditors as pre-petition creditors in the converted chapter 7 necessarily inflicts a net loss on actual pre-petition creditors. Those creditors have had the benefit of distribution from debtors' wage contributions, which would not have been available to them under chapter 7.

\*\*\*

9

Case 1:05-bk-06085-MDF    Doc 69    Filed 07/23/10    Entered 07/23/10 11:06:53    Desc
Main Document    Page 9 of 14

> If the "daily disbursement" problem . . . is not merely theoretical, that problem
> could be resolved by plan language or the confirmation order. § 1326(c).
>
> *Id.*[8]

The Trustee in the within case makes similar arguments – if plan payments do not vest in creditors when they are made, creditors will demand more frequent distributions and debtors will be encouraged to use chapter 13 plans as personal savings accounts. Although the Trustee's concerns are legitimate, policy considerations cannot trump the clear language of the Bankruptcy Code. Like the court in *Boggs*, I find no statutory basis for the Trustee's creditor vesting theory. Further, once a chapter 13 case is confirmed, both of these policy concerns can be addressed through procedures adopted by the Trustee. For example, in this case, once relief from the stay was granted and GMAC began returning payments, the Trustee could have moved under § 1129(a)(3) to modify the plan to eliminate further distributions to GMAC.

    2.    *The res judicata effect of plan confirmation mandates distributions to creditors post-conversion.*

Generally, "a confirmation order is *res judicata* as to all issues decided or which could have been decided at the hearing on confirmation." *In re Szostek*, 886 F.2d 1405, 1408 (3d Cir. 1989).[9] Based on this principal, some courts have held that the *res judicata* effect of an order

---

[8]The *Boggs* decision also invoked the policy of promoting debt repayment espoused by the Third Circuit in *Bobroff*. "[T]he Congressional policy of encouraging debtors to repay their creditors via Chapter 13 is furthered by debtors (and their counsel) knowing they will not be penalized for attempting Chapter 13." *In re Boggs,* 137 B.R. at 411.

[9]The *Szostek* decision has been somewhat narrowly interpreted in the years since it was decided. In *In re Hutchinson,* 410 F. Supp.2d 374 (D. N.J. 2006) the court held that "a Chapter 13 plan confirmation 'at best operates as only a provisional determination of the debtors' and creditors' rights . . . . [A] final determination occurs only upon the order denying or granting a discharge.'" *Id*, 410 F.Supp.2d at 379. The *Hutchinson* decision specifically rejected the approach taken by other courts in giving *res judicata* effect to the order confirming the plan even after the plan was terminated by conversion of the case. *In re Hutchinson*, 410 F.Supp.2d at 380. As further noted by the Court of Appeals for the Fifth Circuit, "[i]t would be inequitable . . . to

10

confirming a chapter 13 plan grants creditors a vested interest in payments made under the plan. *See e.g. In re Shaffer*, 48 B.R. 952 (Bankr. N.D. Ohio 1985). I am not persuaded a debtor continues to be bound by the terms of a chapter 13 plan once he has elected to convert to chapter 7. In *In re Nash*, 765 F.2d 1410 (9th Cir. 1985), chapter 13 debtors brought an action against the standing trustee alleging that he had wrongfully distributed wage deductions after their case had been dismissed. *Nash* specifically rejected the trustee's contention that the distributions were proper because the debtors "continued to be bound by the terms of [their] confirmed plan after dismissal." *Id.* at 1413. Instead, the *Nash* court held that the order dismissing the case "effectively vacate[s] the [] confirmed plan." To support this holding, the *Nash* court relied on a case from the Eastern District of Pennsylvania, *In re Doyle*, 11 B.R. 110, 111 (Bankr. E.D. Pa. 1981), which dealt with a secured creditor's demands for the turnover of estate property as promised in the debtors' confirmed chapter 13 plan. At the hearing on the turnover motion the debtors elected to convert their case. Finding that debtors had an absolute right to convert to chapter 7, the court honored the open-court election and held that the order confirming the plan was "no longer in force." *See also In re Boggs*, 137 B.R. at 410 (conversion is "effective upon notice" and vacates order confirming plan).

Similarly, in the case before me, Debtor's conversion notice ended the chapter 13 case, effectively vacating the order confirming the chapter 13 plan and depriving it of any *res judicata*

---

bind a creditor to a Chapter 13 plan where the debtor has failed to fulfill his obligations under the plan or where the debtor has abandoned the plan by exercising his right to convert." *In re Dorsey*, 505 F.3d 395, 399 (5th Cir. 2007) (reversing bankruptcy court holding that a secured creditor lacked standing to object to chapter 7 discharge when debtor failed to pay secured claim or abandon collateral to creditor while case was in chapter 13).

11

effect. Therefore, by electing to convert his case, Debtor was no longer obligated under the terms of the plan.

    *3. The funds in the plan "vested" in the creditors upon transfer to the trustee.*

Some courts have held that upon receipt by the trustee, plan payments are "vested in" creditors holding allowed claims and cannot thereafter be divested. *See e.g. In re Pegues*, 266 B.R. 328 (Bankr. D. Md. 2001) (finding once chapter 13 debtor makes payment under confirmed plan, he relinquishes all rights to that payment); *In re Hardin*, 200 B.R. 312 (Bankr. E.D. Ky. 1996) (holding that confirmation vests rights in creditors under § 1306 and other "equitable factors"); *In re Galloway*, 134 B.R. 602 (Bankr. W.D. Ky. 1991) (finding that creditor's interest in chapter 13 plan payments vests as payments are made). I find no legal authority for this position.

Upon transfer from a chapter 13 debtor to a trustee, plan payments (except for "conduit payments"[10]) are not earmarked for any specific creditor. The specific amount that any given creditor will receive over the course of the plan is not determined at that point, and the amount may be changed by intervening events such as an extra payment from the debtor or the withdrawal of a claim. Although it is understandable that creditors want to know when their rights vest in a debtor's plan payments, there is a reasonable alternative to vesting at the time the payments are made to the trustee – and that is vesting upon payment to the creditor. Courts that have been requested to direct creditors to return payments received from the trustee before conversion to chapter 7 have uniformly rebuffed such requests. *See In re Carels*, 416 B.R. 153,

---

[10] "Conduit payments" are current payments on long-term secured debt paid by the trustee to a creditor through the plan. In the absence of a provision for conduit payments, a debtor would make these payments directly to a creditor outside the plan.

12

162 (Bankr. E.D. Pa. 2009) ("[F]unds distributed by a chapter 13 trustee to creditors under the terms of a confirmed plan are not recoverable by the debtor if the case is later dismissed or converted. . . .") (citing *In re Verdunn*, 210 B.R. 621, 625-26 (Bankr. M.D. Fl. 1997)); *In re Boggs,* 137 B.R. at 411. I find that the appropriate balance between the rights of debtors to convert to chapter 13 at "any time" and the needs of creditors for certainty that they will not be required to return payments received prior to conversion is reached by holding that a creditor obtains a vested right to the funds in a plan account when the funds are disbursed to the creditor by the trustee. *See In re Luna*, 73 B.R. 999, 1002 (N.D. Ill. 1987)

      *4. The Trustee's duties post-confirmation include the distribution of funds on hand.*

The *Pegues*, *Hardin*, and *Galloway* decisions, *supra*, observed that a chapter 13 trustee is required to perform certain statutory duties after the case is converted. These duties include the filing of a final report pursuant to § 1302(b)(1), which incorporates the duties specified in, among others, § 704(a)(9). These courts have held that because a trustee is required to perform certain statutory duties after conversion, other functions, such as the distribution of funds and the filing of claims objections, are a logical extension of the trustee's authority to complete the administration of the chapter 13 estate. *See In re Pegues*, 266 B.R. at 334 - 35 (citing *Hardin* and *Galloway*). These decisions fail to distinguish between post-confirmation reporting duties and substantive administrative matters related to a chapter 13 trustee's core responsibilities. Section 348(e) provides that "[c]onversion of a case under section . . . 1307 . . . terminates the services of any trustee . . . that is serving in the case before such conversion." 11 U.S.C. § 348(e). In the face of such explicit language terminating the authority of the chapter 13 trustee to administer the estate, I cannot find that the trustee retains such broad administrative powers as suggested by the

13

Case 1:05-bk-06085-MDF    Doc 69    Filed 07/23/10    Entered 07/23/10 11:06:53    Desc
Main Document      Page 13 of 14

*Pegues*, *Hardin*, and *Galloway* decisions. Having determined that creditors have no vested interest in the funds when they are paid to the trustee, I find that § 348(e) "precludes the Trustee from taking *any action with respect to these funds* after the conversion." *In re Luna*, 73 B.R. at 1002 (emphasis added) (citing *In re Perkins*, 36 B.R. 618, 620 (Bank. M.D. Tenn. 1983) (holding that chapter 13 trustee loses all authority to act when the conversion becomes effective).

## Conclusion

For reasons discussed above, I conclude that the payments received by the Trustee are not held in trust pending distribution and that creditors have no vested interest in the funds held by the Trustee upon conversion of the case to chapter 7. Having found that the funds held by the Trustee are property of the Debtor, the motion to compel will be granted. An appropriate order will be entered.

By the Court,

_Mary D. France_
Chief Bankruptcy Judge

Date: July 23, 2010